**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

UNITED STATES OF AMERICA

v.                                                      Case No.  3:26-CR-117-TKW

ANTHONY BERNARD ALLEN,

  Defendant.

_____/

## ORDER OF DETENTION PENDING TRIAL

On July 30, 2026, this court conducted a detention hearing pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.* Based upon the indictment, the Pretrial Services report, the evidence presented at the hearing, the exhibits submitted by the parties, the presentence investigation report filed in *United States v. Anthony Allen*, Case No. 5:00-cr-18 (M.D. Fla. Dec. 8, 2000), and the arguments of the parties, this court finds that Defendant should be detained pending trial because there is no condition or combination of conditions that reasonably would ensure the safety of the community and Defendant's presence at trial.

### I—Eligibility for Detention

The "Government has a substantial interest in ensuring that persons accused of crimes are available for trials." *Maryland v. King*, 569 U.S. 435, 452–53 (2013) (quoting *Bell v. Wolfish*, 441 U.S. 520, 534 (1979)). To safeguard victims, witnesses, and the community, and to ensure that defendants are present at their trials,

defendants "legitimately may be incarcerated by the Government prior to a determination of their guilt or innocence." *Bell*, 441 U.S. at 523. To detain a defendant prior to trial, however, "the Government must comply with constitutional requirements and any applicable statutory provisions." *Id.* at 534 n.15 (citation omitted).

In this case, this court is required to hold a detention hearing because the government has moved for detention and the grand jury charged Defendant with:

- an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act; and

- an offense that involves the possession of a firearm.

*See* 18 U.S.C. § 3142(f)(1)(C), (E).

## II—Standard

The Bail Reform Act of 1984 essentially "provides a federal court with two choices when dealing with a criminal defendant who has been 'charged with an offense' and is awaiting trial." *Reno v. Koray*, 515 U.S. 50, 57 (1995). A court may either release a defendant on appropriate conditions or detain the defendant. *Id.* In determining whether detention is appropriate, courts must keep in mind that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The policy of the Bail Reform Act "is to permit release under the least restrictive condition compatible

with assuring the future appearance of the defendant" and the safety of the community. *United States v. Price*, 773 F.2d 1526, 1528 (11th Cir. 1985).

"A criminal defendant must be released before trial on personal recognizance or upon execution of an unsecured bond, unless the court determines that release will not reasonably ensure his appearance or will endanger the safety of others." *Taylor v. Pekerol*, 760 F. App'x 647, 653 (11th Cir. 2019) (citing 18 U.S.C. § 3142(b)). On the other hand, a defendant must be detained pending trial if he presents a serious risk of flight or poses a danger to another person or members of the community. *Salerno*, 481 U.S. at 749; *accord United States v. Montalvo-Murillo*, 495 U.S. 711, 717 (1990). Before detaining a defendant pending trial, however, the government must establish by a preponderance of the evidence that a defendant poses a serious risk of flight or show by clear and convincing evidence that he is a danger to another person or the community. *See Salerno*, 481 U.S. at 750; *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990); *United States v. King*, 849 F.2d 485, 488–89 (11th Cir. 1988); *United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).

The term "danger to the community" was "not meant to refer only to the risk of physical violence." *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990). Rather, under § 3142(e), the term "danger to the community" also "refers to the danger that the defendant might engage in criminal activity to the detriment of the

community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989); *United States v. Abdullahu*, 488 F. Supp. 2d 433, 438–39 (D.N.J. 2007) (noting that "danger to the community does not only include physical harm or violent behavior"); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) (noting that "violence is not the only danger to the community this court must consider"). For example, "the harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'" *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985); *see United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010). The probability that a released defendant will continue to engage in narcotics trafficking constitutes a risk of danger to the community. *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992); *United States v. Majors*, 932 F. Supp. 853, 857 n.2 (E.D. Tex. 1996).

Clear and convincing evidence of dangerousness exists when the evidence induces "an abiding conviction that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citation omitted). Accordingly, to show by clear and convincing evidence that a defendant poses a danger to the community, the United States need not prove that there is a 100% chance that a defendant will commit harmful acts. Rather, the concept of danger entails probability of harm and, thus, demonstrating a substantial risk of harm is sufficient. *United States v. Shea*, 749 F. Supp. 1162, 1167 (D. Mass. 1990) ("The

term 'danger' invokes a concept of probability (commonly referred to as risk of harm) rather than certainty of harm.").

As noted above, if the government satisfies its burden of demonstrating dangerousness or risk of flight, the Bail Reform Act requires the detention of a defendant. *Montalvo-Murillo*, 495 U.S. at 717; *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996). A defendant may be detained based on *either* the risk of nonappearance *or* his dangerousness; the government is not required to establish both. *King*, 849 F.2d at 488–89.

### III—The Presumption of Risk of Flight and Danger to the Community

"The existence of probable cause to believe that the defendant committed a crime carrying a maximum term of imprisonment of ten years or more under the Controlled Substances Act creates a rebuttable presumption that no conditions of release exist that would reasonably assure the appearance of the person as required and the safety of the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). In "order to trigger section 3142(e)'s rebuttable presumption, the government need not make a showing of probable cause independent of the grand jury's indictment." *King*, 849 F.2d at 487–88; *United States v. Vargas*, 804 F.2d 157, 163 (1st Cir. 1986); *United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir. 1985). That is, "an indictment returned by a duly constituted grand jury conclusively establishes the existence of probable cause for the purpose of triggering the

rebuttable presumptions set forth in § 3142(e)." *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985); *accord Quartermaine*, 913 F.2d at 916 ("A grand jury indictment provides the probable cause required by the statute to trigger the presumption.").

Because a federal grand jury charged Defendant with offenses "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," there is a rebuttable presumption that no condition or combination of conditions will reasonably assure Defendant's appearance at trial and the safety of the community. 18 U.S.C. § 3142(e)(3)(A).

In light of the statutory presumption, therefore, Defendant bears the burden of producing evidence to rebut the presumption. *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991) (per curiam). "Once the presumption arises, the ball is in the defendant's court, and it is incumbent on the defendant to come forward with some evidence to rebut the presumption." *Cook*, 880 F.2d at 1162 (citation omitted). Specifically, Defendant has the burden of producing evidence demonstrating that he is not a risk of flight and he is not a danger to another person or the community. *Quartermaine*, 913 F.2d at 916; *Hurtado*, 779 F.2d at 1479.

"Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Stricklin*, 932 F.2d at 1355; *Quartermaine*, 913 F.2d at 916; *King*, 849 F.2d

at 488. "The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts." *Stone*, 608 F.3d at 945. Rather, this presumption "represents Congressional findings that certain offenders, including narcotics violators, as a group are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). Nevertheless, "the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *Stricklin*, 932 F.2d at 1354–55; *Quartermaine*, 913 F.2d at 916; *King*, 849 F.2d at 488.

In determining whether there are conditions of release that reasonably might assure the appearance of a defendant at trial and the safety of the community, courts must consider:

(1) "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance" or a firearm;

(2) "the weight of the evidence against the person";

(3) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"; and

(4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g); *Salerno*, 481 U.S. at 742–43; *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

### IV—Findings of Fact and Statement of Reasons for Detention

The following factors support the presumption, and this court's finding, that no condition or combination of conditions reasonably would ensure the safety of the community and Defendant's appearance at trial:

**A.     NATURE AND CIRCUMSTANCES OF THE CHARGED OFFENSES**

A grand jury charged Defendant with the following offenses:

- possession with intent to distribute a controlled substance, namely cocaine and cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(ii), and (b)(1)(B)(iii);

- possession of a firearm and ammunition by a person convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); and

- possession with intent to distribute a controlled substance, namely cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

The unlawful distribution of controlled substances represent "one of the greatest problems affecting the health and welfare of our population." *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 668 (1989). Drug distribution causes "grave harm to society." *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part). Thus, the substantial risk that Defendant would engage in drug trafficking if released constitutes a substantial danger to the

community. *Cook*, 880 F.2d at 1161; *United States v. Strong*, 775 F.2d 504, 506–07 (3d Cir. 1985) (noting that in the Bail Reform Act, Congress equated drug trafficking with danger to the community).

Indeed, a "seller of addictive drugs may inflict greater bodily harm upon members of society than the person who commits a single assault." *Rummel v. Estelle*, 445 U.S. 263, 295 n.12 (1980) (Powell, J., dissenting). Therefore, "an indictment for a drug trafficking offense is strong evidence that the defendant is a risk to the community." *United States v. Allen*, 891 F. Supp. 594, 599 (S.D. Fla. 1995). Furthermore, studies "demonstrate a direct nexus between illegal drugs and crimes of violence." *Harmelin*, 501 U.S. at 1003 (Kennedy, J., concurring in part). Additionally, "serious drug offenders pose unusual risks of flight." *United States v. Martir*, 782 F.2d 1141, 1146 (2d Cir. 1986); *accord King*, 849 F.2d at 488 (noting that "those charged with narcotics offenses often pose an especially high risk of flight").

Accordingly, the nature and circumstances of the charged offenses indicate that no condition or combination of conditions reasonably would ensure the safety of the community or Defendant's presence at trial.

**B.    THE WEIGHT OF THE EVIDENCE AGAINST THE DEFENDANT**

This court also must consider the weight of the evidence against Defendant. *Dominguez*, 783 F.2d at 706. According to a proffer by the government, which

Defendant did not contest for purposes of detention, this evidence includes:

- testimony of law enforcement officers who searched Defendant's residence;

- an audio-visual recording of Defendant's admission that the narcotics recovered from Defendant's residence belonged to Defendant;

- the fact that during a search of Defendant's residence on March 19, 2026, law enforcement officers recovered:

    - cocaine—found in three different locations, at least some of which was packaged for sale;

    - marijuana; and

    - a Smith & Wesson 9 mm handgun, loaded with ammunition.[1]

## C.   THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The history and characteristics of Defendant suggest that he poses a risk of danger to other persons and the community and a risk of flight.

### 1.   *Defendant's Multiple Felony Convictions and Life of Crime*

The Pretrial Services report summarizes Defendant's criminal history. It indicates that Defendant has been convicted of at least three felony offenses, including a federal conviction for conspiring to distribute cocaine and cocaine base. Notably, the current case entails allegations of Defendant possessing with intent to

---

[1] "Firearms are known 'tools of the trade' of narcotics dealing because of the dangers inherent in that line of work." *See United States v. Simon*, 767 F.2d 524, 527 (8th Cir. 1985); *see United States v. Coslet*, 987 F.2d 1493, 1495 (10th Cir. 1993) ("[G]uns are a ubiquitous part of the drug trade.").

distribute cocaine and cocaine base. From Defendant's felony convictions, it appears that Defendant is a career drug dealer.

In any event, convicted "felons are more likely to commit violent crimes than are other law-abiding citizens." *United States v. Torres-Rosario*, 658 F.3d 110, 113 (5th Cir. 2011) (quoting *United States v. Barton*, 633 F.3d 168, 175 (3d Cir. 2011)); *accord United States v. Johnson*, 399 F.3d 1297, 1300 (11th Cir. 2005) (noting that "many felons, in fact, are more likely than nonfelons to commit violent acts using a firearm," but "not all felons are potentially more violent than nonfelons"); *United States v. Jones*, 651 F. Supp. 1309, 1310 (E.D. Mich. 1987) (noting that "it is a matter of common knowledge and overriding public concern that convicted felons are far more likely to commit additional felonies than are the other members of the public"). Furthermore, a defendant "with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use." *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010). This factor, therefore, suggests that Defendant poses an increased risk of harm to other persons and the community.

### 2.    *Defendant's Chosen Profession*

From the pretrial services report, the indictment, and the presentence investigation report filed in *United States v. Anthony Allen*, Case No. 5:00-cr-18 (M.D. Fla. Dec. 8, 2000), it appears that Defendant has been a drug dealer most of his life. In addition to being unlawful and detrimental to the safety of society, it is

drug distribution is known to be "a violence-prone business." *United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001); *see United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) ("[I]llegal drugs have long and justifiably been associated with violence."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (noting that "the illegal drug industry is, to put it mildly, a dangerous, violent business"). There is a serious danger that, if released, the Defendant would return to drug trafficking to support himself.

When "a drug trafficker reoffends, he is most likely to commit another drug trafficking offense . . . ." *Ovalles v. United States*, 905 F.3d 1231, 1254 (11th Cir. 2018) (W. Pryor, J., concurring). Undoubtedly "society is endangered when courts release those individuals into the community whose past conduct indicates that they are likely to possess, control or distribute controlled substances." *United States v. Anderson*, 670 F.2d 328, 330-31 (D.C. Cir. 1982). Thus, in multiple ways, "drug offenders pose a special risk of flight and dangerousness to society." *Rueben*, 974 F.2d at 586. This further suggests the need to detain Defendant pending trial.

### 3.    *Defendant's Flight from and Resistance of The Police*

Under section 3142(g), a court also must consider whether a defendant previously resisted arrest or fled from the police. A "defendant's history of flight must be given careful consideration in determining whether bail should be granted." *United States v. Shakur*, 817 F.2d 189, 199 (2d Cir. 1987). "The attempt to elude

capture is a direct challenge to an officer's authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase." *United States v. Sykes*, 561 U.S. 1, 9 (2011). Thus a proclivity to flee from the police indicates that a defendant is both a risk of flight and a danger to the community.

According to the presentence investigation report filed in in *United States v. Anthony Allen*, Case No. 5:00-cr-18 (M.D. Fla. Dec. 8, 2000), on July 29, 1996, Defendant previously resisted the police when they attempted to handcuff him during an arrest for a relatively minor offense. PSR ¶ 64.

Similarly, the PSR states that on September 7, 1993, when the police stopped a car that Defendant was operating, Defendant "exited the vehicle and attempted to flee on foot." PSR ¶ 59.

### 4.    *Defendant's Refusal to Answer Questions about Substance Abuse and his History of Substance Abuse*

This court is required to consider a defendant's "history relating to drug or alcohol abuse." 18 U.S.C. § 3142(g)(3)(A). According to the Pretrial Services report, Defendant refused to answer questions regarding abuse of drugs. This court can infer from that refusal that Defendant has a history of substance abuse.

Furthermore, the presentence investigation report contains a history of arrests which indicate that Defendant abused controlled substances.

Additionally, Defendant previously was placed on supervised release after his conviction in *United States v. Anthony Allen*, Case No. 5:00-cr-18 (M.D. Fla. Dec.

Page 13 of 21

8, 2000). In that case, the district court revoked Defendant's supervised release because—among other things—Defendant submitted multiple urinalyses that indicated Defendant had abused marijuana on multiple occasions.

Defendant also submitted an exhibit which contained his medical history, which included an admission of "illicit drug use."

Various courts have held that the use of unlawful drugs is an additional factor favoring detention because a drug abuser is both a flight risk as well as a danger to the community. *United States v. Ellison*, 12 F. App'x 25, 26 (2d Cir. 2000) (affirming the district court's detention order and noting that a drug abuser poses a risk of flight); *United States v. Chappelle*, 51 F. Supp. 2d 703, 706 (E.D. Va. 1999) (noting that a defendant's history of abusing drugs is a factor that weighs against his release).

As the Supreme Court has recognized, the abuse of drugs can embolden defendants and make them more aggressive. *Florence v. Board of Chosen Freeholders*, 566 U.S. 318, 332 (2012). Furthermore, drug abusers are more likely to commit other crimes—including violent crimes—in an effort to obtain capital to purchase drugs. *Ramirez v. Collier*, 595 U.S. 411, 458 (2022) (Thomas, J., dissenting) (noting "the brutal slaying of a working father during a robbery spree to supply a drug habit"); *Andrus v. Texas*, 590 U.S. 806, 807 (2020) (per curiam) (noting that to "fund a spiraling drug addiction," the defendant "began selling

drugs"); *Wong v. Belmontes*, 558 U.S. 15, 15–16 (2009) (per curiam) (noting that a drug abuser "bludgeoned [the victim] to death, . . . stole [her] stereo, sold it for $100, and used the money to buy beer and drugs"); *Smith v. Texas*, 543 U.S. 37, 41 (2004) (per curiam) (noting that a drug abuser "regularly stole money from family members to support a drug addiction"); *Bell v. Cone*, 535 U.S. 685, 703 (2002) ("In an apparent effort to fund this growing drug habit, he committed robberies."); *Buford v. United States*, 532 U.S. 59, 62 (2001) (noting that robberies had been motivated by a drug addiction). In multiple ways, therefore, "drug offenders pose a special risk of flight and dangerousness to society." *Rueben*, 974 F.2d at 586.

### 5. *Defendant's Access to and Possession of a Firearm*

According to the indictment returned by the grand jury, Defendant obtained and possessed a firearm and ammunition, despite the fact that Defendant is a convicted felon. This further indicates that Defendant poses a danger to the community, especially in light of his history of abusing drugs and the allegations in the indictment that Defendant possessed with intent to distribute controlled substances.

Courts have held that a defendant's possession of firearms—regardless of whether the defendant ever used firearms—is a factor suggesting that a defendant is a danger to the community. *See United States v. Tomero*, 169 F. App'x 639, 640 (2d Cir. 2006); *United States v. Dillard*, 214 F.3d 88, 93 (2d Cir. 2000) (noting that

"firearms are conventionally regarded as essential equipment of criminals engaged in violent crime"). Furthermore, Defendant has a history of drug abuse and drug distribution. As courts have noted, "drugs and guns form a lethal combination that can lead to violence." *United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997). Defendant's demonstrated access to firearms—despite being a convicted felon and thus prohibited from possessing a firearm—further demonstrates his dangerousness and the unlikelihood that he would abide by the conditions of release imposed by this court. The fact that Defendant allegedly possessed a firearm in a residence in which he was storing cocaine and cocaine base also indicates Defendant's dangerousness.

**6.      *Defendant's Multiple Failures to Abide by Conditions Imposed by Other Courts***

This court also notes that the Defendant previously failed to abide by conditions imposed by other courts—on at least eight occasions. This includes Defendant's multiple violations of the terms of supervised release imposed by the United States District Court for the Middle District of Florida.

If this court were to release the Defendant, it would be required to impose terms and conditions by which the Defendant would be required to abide. A court can reasonably infer that a defendant who previously refused to abide by terms of supervised release, probation, or pretrial release imposed by other courts would likewise refuse to abide by terms of pre-trial release imposed by a federal court. *See*

*United States v. Alderte*, 336 F.R.D. 240, 281 (D.N.M. 2020) (noting the court's skepticism that the defendant—who previously committed parole and probation violations—would abide by the conditions the court would impose if it released the defendant). Such defendants likely would refuse to comply with conditions of release imposed by other courts. A defendant who has a history of violating conditions of probation, therefore, entails a greater risk of violating conditions of pre-trial release.

Furthermore, in *United States v. Anthony Allen*, Case No. 5:00-cr-18 (M.D. Fla.), when the district court placed Defendant on supervised release, Defendant's multiple violations of supervised release included multiple failures to follow the instructions of his probation officer. This further suggests that Defendant would likewise fail to comply with the instructions of a pretrial services officer if this court were to release Defendant pending his trial.

Additionally, at least five of his supervised release violations entailed the commission of a criminal offense. Defendant's criminal conduct while on supervised release including distribution of cocaine—the very crime of which Defendant had been convicted in the Middle District of Florida and the crime which the grand jury charged Defendant with committing in the instant case. As noted above, distribution of narcotics entails substantial danger to society.

When a federal court releases a defendant, it must impose a condition that the defendant not commit additional criminal offenses. Were this court to release Defendant and impose this mandatory condition, there is a substantial danger that the Defendant would violate that condition, as he did when other courts imposed this condition. *See United States v. Odegbaro*, 655 F. App'x 630, 633 (10th Cir. 2016) (holding that the district court did not err in detaining a defendant who previously committed crimes while on probation); *United States v. Wray*, 980 F. Supp. 534, 535 (D.D.C. 1997) (holding that the defendant should be detained because, among other things, he committed crimes while on parole, and thus it was "highly unlikely that he would comply with the conditions to be imposed if he were released"). For this reason too, the Defendant poses a danger to society and a substantial risk of flight.

### 7.    *Defendant Previously Failed to Appear for Court Twice*

Section 3142(g)(3)(A) also requires this court to consider a defendant's "record concerning appearances at court proceedings." *See United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015); *United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2d Cir. 1986); *United States v. Maull*, 773 F.2d 1479, 1488 (8th Cir. 1985) (en banc). A court "should consider past behavior in assessing the likelihood of prohibited behavior in the future . . . ." *United States v. Madoff*, 586 F. Supp. 2d 240, 250 (S.D.N.Y. 2009). According to the Pretrial Services report, Defendant twice failed to appear for court. These failures to appear indicate that there is an

increased danger that Defendant would not appear at his trial were this court to release Defendant.

**8.      *The Likelihood of a Substantial Sentence if Defendant Is Convicted***

"Assessment of the flight risk posed by a defendant often implies a calculation of the relative cost of remaining and submitting to trial or, in the alternative, fleeing the jurisdiction." *United States v. Megahed*, 519 F. Supp. 2d 1236, 1242 (M.D. Fla. 2007). A defendant facing a substantial term of imprisonment has commensurate incentive to flee insofar as the cost of taking his chances at trial is great in comparison to the cost of fleeing. *See United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) (noting that "the steeper the sentence, accompanied by a strong case against him, and an extensive prior criminal history increases the probability of risk of flight").

Defendant certainly has strong incentive to flee. *United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) (noting that a "defendant facing a potentially lengthy prison sentence possesses a strong motive to flee"); *Tomero*, 169 F. App'x at 641 (acknowledging that a "defendant's potential for a fifteen-year sentence created a substantial risk of flight"). Specifically, if convicted of the charged offenses, Defendant faces a substantial sentence, including a mandatory-minimum term of *five years of imprisonment* and a maximum term of *imprisonment for life*. Indeed, because Defendant is 54 years old and has leukemia, it is likely that, if

convicted, Defendant will spend the rest of his life in prison. This factor also indicates that Defendant should be detained pending trial.

### 9.    *Defendant's Use of Aliases*

The pretrial services report also indicates that Defendant has used approximately five aliases. A defendant's demonstrated use of a false name is indicative of an increased risk of flight. *United States v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987); *United States v. Gonzales Claudio*, 806 F.2d 334, 339 (2d Cir. 1986); *United States v. Isaacs*, 469 F. Supp. 3d 801, 804 (S.D. Ohio 2020). Use of a false name makes flight easier, makes it less likely that the Marshals Service would be able to apprehend a defendant if he flees, and suggests that a defendant will not hesitate to use other fake identities to facilitate flight. *See United States v. Stewart*, 19 F. App'x 46, 49 (4th Cir. 2001); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005). Defendant's demonstrated use of an alias, therefore, indicates that he poses an increased risk of flight.

### D.    THE NATURE AND SERIOUSNESS OF THE DANGER POSED BY RELEASE

As the discussion above indicates, Defendant poses a serious risk of danger to the community, including the risk of his continued drug distribution. *See Hare*, 873 F.2d at 798 (observing that the "risk of continued narcotics trafficking on bail constitutes a risk to the community"); *Leon*, 766 F.2d at 81 (noting that "danger" includes "the harm to society caused by narcotics trafficking").

Based on this short summary of some of the information elicited at the detention hearing and the Pretrial Services report, the presumption that Defendant poses a danger to the community and a serious risk of flight, and after having considered the statutory factors and the findings of fact above, this court finds that the factors set forth in § 3142(g) weigh heavily in favor of Defendant's detention and indicate that he poses a substantial danger to the community. Accordingly, Defendant shall be detained pending trial.

## V—Directions Regarding Detention

Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Attorney General shall afford Defendant a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshals Service for the purpose of an appearance in connection with a court proceeding.

**SO ORDERED** this <u>30th</u> day of July 2026.

/s/ *Michael J. Frank*
_____
**Michael J. Frank**
**United States Magistrate Judge**